**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAQUELINE DUSHAJ, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>**JURY TRIAL DEMANDED**</u> |
| THE CAMPBELL'S COMPANY, | |
| Defendant. | |

Plaintiff Jaqueline Dushaj ("Plaintiff") brings this action on behalf of herself and all others similarly situated against The Campbell's Company ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except for those allegations pertaining to herself, which are based on her personal knowledge.

<u>**NATURE OF THE ACTION**</u>

1.     This is a class action on behalf of purchasers of Defendant's Cape Cod brand potato chips beverages (the "Product" or "Products") that claim to contain either "No Artificial Flavors or Preservatives" or "No Artificial Colors, Flavors or Preservatives" (the "Representations").[1]

2.     These Representations are false and/or misleading because the Products contain citric acid – a well-known preservative commonly used in food products.

3.     Defendant's Representations are featured on the Products' labeling in order to induce health-conscious consumers to purchase food products that are free from preservatives. Defendant

---

[1] The Products include all sizes of the following Cape Cod potato chips: Sea Salt & Vinegar; Sweet & Spicy Jalapeno; Sweet Mesquite Barbeque; Sea Salt & Cracked Pepper; Sour Cream & Onion, Less Fat Aged White Cheddar & Sour Cream, Less Fat Sea Salt & Vinegar, Less Fat Sweet Mesquite Barbeque, Honey BBQ Waves, Jalapeno Ranch Waves, and White Cheddar & Sour Cream Waves.

markets its Products in a systematically misleading manner by misrepresenting that the Products do not contain preservatives.

4.      Defendant has profited unjustly as a result of its deceptive conduct.  Plaintiff therefore asserts claims on behalf of herself and similarly situated purchasers for violation of New York General Business Law §§ 349 and 350, breach of express warranty, and unjust enrichment.

## JURISDICTION & VENUE

5.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6.      This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York. This Court also has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the State of New York, and does supply goods within the State of New York.

7.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

8.      Plaintiff Jaqueline Dushaj is a citizen of New York who resides in Middletown, New York.  Plaintiff has purchased the Products – specifically the Sea Salt & Vinegar, Sweet Mesquite Barbeque, and Sea Salt & Cracked Pepper flavors – on numerous occasions over the last three years

from Walmart and ShopRite stores located in Middletown, NY.  Most recently, in or around May 2025, Plaintiff purchased Defendant's Sea Salt & Vinegar and Sweet Mesquite Barbeque potato chips from a Walmart store in Middletown, NY.  In purchasing the Products, Plaintiff relied on Defendant's false, misleading, and deceptive marketing of the Product as containing either "No Artificial Flavors or Preservatives" or "No Artificial Colors, Flavors or Preservatives."  Plaintiff understood both the "No Artificial Flavors or Preservatives" or "No Artificial Colors, Flavors or Preservatives" representations meant the Products did not contain any preservatives.  However, the Products she purchased contained the preservative citric acid.  Had Plaintiff known the "No Artificial Flavors or Preservatives" and "No Artificial Colors, Flavors or Preservatives" representations were false and misleading, she would not have purchased the Products, or, at the very least, would have only been willing to purchase the Products at a lesser price.

9.     Defendant The Campbell's Company is organized under the laws of New Jersey, with its principal place of business located at 1 Campbell Place, Camden, NJ 08103.

10.     Defendant manufactures, packages, labels, advertises, markets, distributes and/or sells the Products in New York and throughout the United States.  Defendant, at all times material hereto, conducted business in New York, maintained agents for the customary transaction of business in New York, and conducted substantial and not isolated business activity within this state.

11.     On March 26, 2018, Defendant announced that it had acquired Snyder's-Lance – former owner of the Cape Cod brand – for $6.1 billion.  Denise Morrison, then Defendant's CEO, stated:  "The combination of Campbell and Snyder's-Lance create[d] a unique, diversified snacking portfolio of differentiated brands and a large variety of better-for-you snacks for consumers.  I am excited about the combination and confident that it will create significant shareholder value through

both revenue growth and cost synergies."[2]  To unlock the power of the combined brand portfolio, and achieve both cost and potential revenue opportunities, Defendant integrated the Snyder's-Lance portfolio to create a unified snacking organization called Campbell Snacks:  "The Campbell Snacks team … focus[ed] on optimizing the value of our U.S. snacks business to deepen our partnership with customers through the power of the combined portfolio."[3]  "Based on the significance of the acquisition, Campbell … initiated a systematic approach that engage[d] both companies to quickly share key learnings and best practices.  Campbell … integrate[d] key control functions, including supply chain and quality, and finance."[4]  The Cape Cod Products are part of the Campbell's brand.[5]

## FACTUAL BACKGROUND

### A. Defendant Misrepresents that there are No Artificial Preservatives in the Products

12.    Defendant advertises on the label for each of the Products that there is either "No Artificial Flavors or Preservatives" or "No Artificial Colors, Flavors or Preservatives" in the Products.  However, the Products contain citric acid, which is a well-known preservative.

13.    The label for Cape Cod Salt & Vinegar potato chips states that there are "No Artificial Colors, Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SUNFLOWER, SAFFLOWER, AND/OR SOYBEAN), SALT, WHITE VINEGAR POWDER, CITRIC ACID, MALIC ACID, ACETIC ACID, APPLE CIDER VINEGAR, DEXTROSE.

---

[2] *See* March 26, 2018, Form 8-K, *available at* https://investor.thecampbellscompany.com/node/7326/html (last visited July 7, 2025).
[3] *Id.*
[4] *Id.*
[5] *Id.* ("The Campbell Snacks portfolio will feature … Snyder's-Lance's well-known brands, such as Snyder's of Hanover, Lance, Kettle Brand, KETTLE chips, Cape Cod, Snack Factory Pretzel Crisps, Emerald and Late July.").

14.     The label for Cape Cod Sweet & Spicy Jalapeno potato chips states that there are "No Artificial Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SAFFLOWER, SOYBEAN AND/OR SUNFLOWER), DEXTROSE, SALT, ONION POWDER, SUGAR, GARLIC POWDER, GREEN BELL PEPPER POWDER, JALAPENO PEPPER POWDER, YEAST EXTRACT, TORULA YEAST, CITRIC ACID, NATURAL FLAVOR, SPICES, PAPRIKA EXTRACT (COLOR), DRIED VINEGAR.

15.     The label for Cape Cod Sweet Mesquite Barbeque potato chips states that there are "No Artificial Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SUNFLOWER, SAFFLOWER, AND/OR SOYBEAN), SUGAR, SALT, TOMATO POWDER, PAPRIKA, SPICES (CONTAINS CELERY), MOLASSES, ONION POWDER, TORULA YEAST, GARLIC POWDER, NATURAL FLAVOR (INCLUDING SMOKE), CITRIC ACID, VINEGAR.

16.     The label for Cape Cod Sea Salt & Cracked Pepper potato chips states that there are "No Artificial Colors, Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SUNFLOWER, SAFFLOWER, AND/OR SOYBEAN), CORN SYRUP SOLIDS, WHEY, SALT, BUTTERMILK, SPICES, CRACKED BLACK PEPPER, DRY VINEGAR (MALTODEXTRIN, VINEGAR SOLIDS), SUGAR, SEA SALT, CITRIC ACID, NATURAL FLAVOR, GARLIC POWDER, ONION POWDER, CORNSTARCH, TORULA YEAST. CONTAINS: MILK.

17.     The label for Cape Cod Sour Cream & Onion potato chips states that there are "No Artificial Colors, Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SAFFLOWER, SOYBEAN AND/OR SUNFLOWER), SALT, SOUR CREAM (CULTURED CREAM, NONFAT MILK), WHEY, CULTURED NONFAT MILK, BUTTERMILK, NONFAT MILK, ONION POWDER, SUGAR, LACTIC ACID, GARLIC POWDER, CITRIC ACID, PARSLEY, GREEN ONIONS, NATURAL FLAVORS. CONTAINS: MILK

18.     The label for Cape Cod Less Fat Aged White Cheddar & Sour Cream potato chips states that there are "No Artificial Colors, Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SAFFLOWER, SOYBEAN AND/OR SUNFLOWER), SALT, WHEY, SOUR CREAM (CREAM, NONFAT MILK, CULTURES), ONION POWDER, CHEDDAR CHEESE (CULTURED MILK, SALT, ENZYMES), MONTEREY JACK CHEESE (MILK, CULTURES, SALT, ENZYMES), SWISS CHEESE (MILK, CULTURES, SALT, ENZYMES), BUTTERMILK, NONFAT DRY MILK, DEXTROSE, VINEGAR POWDER (MALTODEXTRIN, VINEGAR), NATURAL FLAVOR, WHEY PROTEIN CONCENTRATE, GARLIC POWDER, CITRIC ACID, YEAST EXTRACT, LACTIC ACID. CONTAINS: MILK.

19.     The label for Cape Cod Less Fat Sea Salt & Vinegar potato chips states that there are "No Artificial Colors, Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SUNFLOWER, SAFFLOWER, AND/OR SOYBEAN), SALT, WHITE VINEGAR POWDER, CITRIC ACID, MALIC ACID, ACETIC ACID, APPLE CIDER VINEGAR, DEXTROSE.

20.     The label for Cape Cod Less Fat Sweet Mesquite Barbeque potato chips states that there are "No Artificial Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SUNFLOWER, SAFFLOWER, AND/OR SOYBEAN), SUGAR, SALT, TOMATO POWDER, PAPRIKA, SPICES (CONTAINS CELERY), MOLASSES, ONION POWDER, TORULA YEAST, GARLIC POWDER, NATURAL FLAVOR (INCLUDING SMOKE), CITRIC ACID, VINEGAR.

21.    The label for Cape Cod Honey BBQ Waves potato chips states that there are "No Artificial Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SAFFLOWER, SOYBEAN AND/OR SUNFLOWER), SUGAR, SALT, MOLASSES, HONEY, ONION POWDER, PAPRIKA FOR COLOR, GARLIC POWDER, SPICES, YEAST EXTRACT, TORULA YEAST, CITRIC ACID, TOMATO POWDER, NATURAL FLAVOR, SMOKE FLAVORING, GRILL FLAVOR (FROM SUNFLOWER OIL).

22.    The label for Cape Cod Jalapeno Ranch Waves potato chips states that there are "No Artificial Colors, Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SAFFLOWER, SOYBEAN AND/OR SUNFLOWER), WHEY, SALT, BUTTERMILK, ONION POWDER, JALAPENO PEPPER POWDER, GARLIC POWDER, TOMATO POWDER, LACTIC ACID, PARSLEY, NATURAL FLAVORS, VINEGAR, SPICES, CITRIC ACID, YEAST EXTRACT. CONTAINS: MILK

23.    The label for Cape Cod White Cheddar & Sour Cream Waves potato chips states that there are "No Artificial Colors, Flavors or Preservatives" even though it contains citric acid:



INGREDIENTS: POTATOES, VEGETABLE OIL (CANOLA, SAFFLOWER, SOYBEAN AND/OR SUNFLOWER), WHEY, SEA SALT, SOUR CREAM POWDER (CREAM, NONFAT DRY MILK, CULTURES), CHEDDAR CHEESE (MILK, SALT, CULTURES, ENZYMES), ONION POWDER, BUTTERMILK, NATURAL FLAVORS, GARLIC POWDER, ENZYME MODIFIED CHEDDAR CHEESE (MILK, CULTURES, SALT, ENZYMES), CITRIC ACID, WHEY PROTEIN CONCENTRATE, CREAM, MILK FAT, NONFAT DRY MILK, SALT, YEAST EXTRACT. CONTAINS: MILK

### B. **Citric Acid is a Preservative**

24.     The U.S. Food & Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."  21 C.F.R. §101.22(a)(5).

25.     Food preservatives are classified into two main groups: antioxidants and antimicrobials.  Food scientists agree that the chemical properties of citric acid make it a preservative.  Specifically, citric acid is classified as an antioxidant that delays or prevents the deterioration of foods by so-called oxidative mechanisms.[6]  However, it also possesses antimicrobial properties.

26.     In its "Overview of Food Ingredients, Additives & Colors," the FDA lists citric acid as a preservative.[7]  The FDA also recognizes that preservatives, like citric acid, are commonly used in packaged foods such as the Products.  Under the "What They Do" table heading, the FDA states that preservatives help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness."[8]

27.     Similarly, on its website, the FDA also classifies and identifies citric acid as a

---

[6] *See Preservatives,* BRITTANCIA, https://www.britannica.com/topic/food-additive/Preservatives#ref502211 (last visited July 7, 2025).
[7] *See Overview of Food Ingredients, Additives, and Colors*, U.S. FOOD & DRUG ADMIN. (2018), https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited July 7, 2025).
[8] *Id.*

preservative in its discussion of "Types of Food Ingredients."[9]  The FDA lists "citric acid" as a preservative that is commonly used in foods like the Products.[10]  Under the "What They Do" table heading, the FDA elaborates that citric acid helps "[p]revent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness:"[11]

| Types of Ingredients | What They Do | Examples of Uses | Ingredient Names That May Be Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

28.     The FDA's classification of citric acid as a preservative is further bolstered in a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc.  In the letter, the FDA deemed the "Pineapple Bites" and "Pineapple Bites with Coconut" products manufactured by the companies "misbranded within the meaning of Section 403(k) of the [Federal Food and Drug Cosmetic] Act [21 U.S.C. 343(k)] in that they contain the *chemical preservatives* ascorbic acid and *citric acid* but their labels fail to declare these preservatives with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[12]

29.     Based on the foregoing, Defendant's use of citric acid in its Products renders its "No

---

[9] *See Types of Food Ingredients*, https://www.fda.gov/food/food-additives-and-gras-ingredients-information-consumers/types-food-ingredients (last visited June 30, 2025).
[10] *Id.*
[11] *Id.*
[12] *See* October 6, 2010, FDA Warning Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc., available at http://web.archive.org/web/20101109083452/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm228663.htm (last visited June 30, 2025).

Artificial Flavors or Preservatives" or "No Artificial Colors, Flavors or Preservatives" representations false and misleading.

**C. Defendant's Subjective Intent of Use is Immaterial**

30.    Citric acid functions as a preservative in the Products, and this is true regardless of Defendant's subjective purpose or intent for adding it to the Products, such as to impart flavor.[13]

31.    Even if the Products' citric acid does not function as a preservative in the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to do so.  *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, tends to prevent or retard deterioration"); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving.").[14]

32.    As the USDA explains: [15]

> Citric acid is mainly used in the food and beverage industry, because of its general recognition as safe, and having pleasant taste, high water solubility, and chelating and buffering properties.  Citric acid is used extensively in carbonated beverages to provide taste and to complement fruit and berry flavors.  It also increases the effectiveness of antimicrobial preservative….

> Due to its versatile array of food uses, it is difficult to determine whether citric acid and its salts are primarily to recreate flavors and textures lost in processing, although it is clear that they are used indirectly for these purposes. For example, citric acid is used extensively in carbonated beverages to provide a sour taste and to complement fruit and berry flavors. It also increases the effectiveness of antimicrobial preservatives.

---

[13] L. Somogyi, Chapter 13: *Direct Food Additives in Fruit Processing*, in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); J. deMan, *Chapter 11: Additives and Contaminants*, in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives").

[14] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited June 30, 2025).

[15] United States Department of Agriculture, *Citric Acid*, at 20-21, available at https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf (last visited July 7, 2025).

**D.  The Products' Citric Acid is Artificially and Chemically Synthesized**

33.    "Citric acid naturally exists in fruits and vegetables.  However, it is not the naturally

occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and

beverage additive.  Approximately 99% of the world's production of MCA is carried out using the

fungus *Aspergillus niger* …  The average consumer is under the impression that the added citric

acid listed in the ingredients of prepared foods, beverages and vitamins is derived from natural

sources such as lemons and limes.  However, the ingredient list is quite misleading since the added

citric acid is not procured through natural sources.  More accurate terminology would list this

substance as manufactured citric acid."[16] *Aspergillus niger* is a processed derivative of black mold

which can cause allergic reactions and diseases in humans.  Negative side effects of consuming

manufactured citric acid include swelling and stiffness resulting in joint pain, muscle pain, stomach

pain, and shortness of breath.[17]

**E.  Defendant Exploits Consumer Demand for Preservative-Free Products**

34.    Defendant's misrepresentations seek to capitalize on consumers' preference for

products with no preservatives.  Indeed, "foods bearing 'free-from' claims are increasingly relevant

to Americans, as they perceive the products as closely tied to health … 84 percent of American

---

[16] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7118817/ (last visited June 23, 2025); I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), https://doi.org/10.1186/s13065-017-0251-y (last accessed June 23, 2025); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690 (last visited June 23, 2025).
[17] *Id.*

consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[18]

35.    According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, they often chose products with "No Preservatives" labels.[19]

36.    Accordingly, Defendant's misrepresentations are material to reasonable consumers. Reasonable consumers would attach importance to a representation that a product has "No Artificial Flavors or Preservatives" or "No Artificial Colors, Flavors or Preservatives" because research demonstrates that a majority of consumers place importance on preservative-free claims.

37.    The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[20] Based on the foregoing, consumers are willing to purchase and pay a premium for healthy non-preservative food items like the Products.

38.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

---

[18] *See Free-From Food Trends-US-May 2015,* MINTEL https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last visited June 30, 2025).

[19] *See* Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896 (2020).

[20] *See Global Wellness Institute, The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025,* https://www.hospitalitynet.org/news/4108643.html (last visited June 30, 2025).

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Fed R. Civ. P. 23(a), (b)(1), and (b)(3). Specifically, the Class is defined as:

> All persons who, within the three years preceding the filing of the original Complaint ("Class Period"), purchased one or more of the Products within the State of New York for personal, family or household purposes, and not for resale.

40.     Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendant has a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

41.     Plaintiff reserves the right to amend or otherwise alter the above class definition presented to the Court at the appropriate time, or to add or eliminate classes and subclasses as appropriate, in response to facts learned through investigation, discovery, and the specific theories of liability, or otherwise.

42.     This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

43.     **Numerosity:**  The precise number of members of the Class is unknown to Plaintiff, but it is clear the number greatly exceeds the number that would make joinder practicable, particularly given Defendant's comprehensive distribution and sales network throughout New York, and the entire United States.  However, members of the Class and their identities may be determined

through discovery.

44.    **Commonality and Predominance**:  This Action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class. All members of the Class were exposed to the deceptive practices of Defendant, as alleged herein. Included within the common questions of law or fact are:

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.    Whether Defendant made false and/or misleading statements to the Class and the public concerning the artificial preservatives in its Products;

d.    Whether Defendant's false and misleading statements concerning its Products was likely to deceive the public;

e.    Whether Defendant violated New York General Business Law §§ 349 and 350.

f.    Whether Defendant committed a breach of express warranty;

g.    Whether Plaintiff and the Class members are entitled to equitable and/or injunctive relief;

h.    Whether Plaintiff and the Class members have sustained damage as a result of Defendant's unlawful conduct;

i.    The proper measure of damages sustained by Plaintiff and Class members; and

j.    Whether Defendant was unjustly enriched by its deceptive practices.

45.    **Typicality**:  Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products.   Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and

the Class members sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Member's claims arise from the same practices and course of conduct and are based on the same legal theories.  Further, there are no defenses available to Defendant that are unique to Plaintiff's claims.

46.    **Adequacy:**  Plaintiff is an adequate representative of the members of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent.  Plaintiff has retained counsel competent and experienced in the prosecution of complex class action litigation, including complex questions that arise in consumer protection litigation. Plaintiff and her counsel will prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.  Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

47.    **Superiority:**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.  Even if the members of the Class could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system and thereby unnecessarily clogging of dockets.

48.    By contrast, the class action device presents far fewer management difficulties and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Class's claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

49.     **Declaratory and Injunctive Relief:**  Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here Defendant has engaged in conduct that has misled consumers about the presence of artificial preservatives in its Products. Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.  Plaintiff would purchase the Products again if the label was changed to reflect that the Products contained artificial preservatives.

50.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy as above stated.

## CAUSES OF ACTION

### COUNT I
### Violation of New York G.B.L. § 349 *et seq.*
### (On Behalf of Plaintiff and the Class)

51.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

52.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

53.     This claim is brought pursuant to the laws of the State of New York.

54.     Plaintiff and Class members are "persons" within the meaning of the GBL § 349(h).

55.    Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

56.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

57.    Defendant made false and misleading statements by marketing the Products as containing "No Artificial Flavors or Preservatives" or "No Artificial Colors, Flavors or Preservatives," when the Products contain citric acid.

58.    In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

59.    Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products in fact do not contain any artificial preservatives.

60.    Defendant's deceptive acts and practices were directed at consumers.

61.    Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest.  Defendant's conduct includes unfair and misleading acts and practices that have the capacity to deceive consumers and are harmful to the public at large.  Defendant's conduct is misleading in a material way because they fundamentally misrepresent that Products do contain artificial preservatives.

62.    Plaintiff and Class members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations,

as described herein. As a result, Plaintiff and Class members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (containing no artificial preservatives) and the Products as actually sold (containing artificial preservatives).

63.    On behalf of herself and other members of the Class, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

### COUNT II
### Violation of New York G.B.L. § 350
### (On Behalf of Plaintiff and the Class)

64.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

65.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

66.    GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

67.    New York General Business Law Section 350-a(1) defines false advertising as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

68.    Defendant's labeling and advertisement of the Products was false and misleading in a material way.  Specifically, Defendant advertised the Products as containing "No Artificial Flavors or Preservatives" or "No Artificial Colors, Flavors or Preservatives" when in fact the Products contain citric acid, which is an artificial preservative.

69.    Plaintiff understood Defendant's misrepresentations to mean that the Products in fact contained no artificial preservatives, as reasonable consumers understand the term.

70.    Defendant's misrepresentations are consumer-oriented and were and are likely to mislead reasonable consumers acting reasonably under the circumstances.

71.    Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

72.    As a result of the misrepresentations, Plaintiff and Class members have suffered economic injury because: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations, as described herein. As a result, Plaintiff and Class members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

73.    By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and Class members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Class)**

74.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth

above as though fully set forth herein.

75.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

76.    Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contained no artificial preservatives.

77.    Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Class.

78.    However, the Products do not conform to Defendant's representations and warranties because the Products contain citric acid, which is an artificial preservative.  By falsely representing the Products in this way, Defendant breached express warranties.

79.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Class have been injured and harmed in an amount to be proven at trial.  Had Plaintiff and members of the Class known the Products did in fact contain artificial preservatives, they would not have purchased the Products, or would have paid substantially less for them.

80.    Prior to filing the initial complaint in this action, Defendant was served via certified mail with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313 and 2-607.

**COUNT IV**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and the Class)**

81.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

82.    Plaintiff brings this claim individually and on behalf of all members of the Class against Defendant. Upon certification, the Class will consist of more than 100 named Plaintiffs.

83.    The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

84.    The Products are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

85.    Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

86.    Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4) and 2301(5).

87.    In connection with the sale of the Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), that the Products contain no artificial preservatives.  Specifically, Defendant represented in writing that there are "No Artificial Flavors or Preservatives" or "No Artificial Colors, Flavors or Preservatives" in the Products.

88.    In fact, the Products contain citric acid, which is an artificial preservative.

89.    By reason of Defendant's breach of warranty, Defendant violated the statutory rights due to Plaintiff and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seg*, thereby damaging Plaintiff and Class Members.

90.    Plaintiff and Class Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products or would have paid substantially less for them if they knew of Defendant's false and misleading Representations.

<u>**COUNT V**</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

91.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth

above as though fully set forth herein.

92.    Defendant, through its misleading representations and omissions, enticed Plaintiff and members of the Class to purchase the Products.

93.    Plaintiff and Class members conferred a benefit on Defendant by purchasing the Products.

94.    By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members.

95.    Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct.

96.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits they received from Plaintiff and the Class as the result of their deceptive marketing and advertising practices.

97.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class members is unjust and inequitable, Plaintiff seeks restitution from, and an order from the Court disgorging all profits, benefits and other compensation obtained by Defendant due to its wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed class the following relief against Defendant:

(a)    For an order certifying the Class and naming Plaintiff's attorneys as Class Counsel to represent the members of the Class;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order requiring Defendant to undertake a corrective advertising campaign;

(g)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(h)     Granting such other and further relief as many be just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 7, 2025                          Respectfully submitted,

**KAMBERLAW, LLC**


By:____*/s/ Frederick J. Klorczyk III*_____
            Frederick J. Klorczyk III

Frederick J. Klorczyk III
305 Broadway, Suite 713
New York, NY 10007
Tel: (646) 964-9604
Fax: (212) 202-6364
Email: fklorczyk@kamberlaw.com

*Attorneys for Plaintiff*